Statement of the Case.
MONROE, J.
This is a suit brought under Act No. 101 of 1898 to quiet certain tax titles to a tract of land in the parish of St. Landry. Agreeably to the prayer of the petition, citations were directed to John I. Warren and Thomas W. Crawford, or heirs, Mrs. Claudia Pearce, wife of Charles W. Owen, and the Board of Levee Commissioners of the Red River Atchafalaya and Bayou Boeuf levee district, and were served on curators ad hoe, duly appointed, or otherwise, as the law requires, and, none of the parties so served having appeared, judgment by default was entered against them. Thereafter, and before confirmation of the default, Mrs. Owen filed an answer, after which there was trial, resulting in a judgment for plaintiff, against all the defendants, from which Mrs. Owen alone has appealed. The facts disclosed by the record, which are pertinent to the ease as thus presented to this court, are as follows:
By acts of date February 6 and August 23, 1888, respectively, S. S. (Stephen S.) Pearce acquired by purchase from Thomas P. Frith the two undivided half interests in the tract of land in question, the description of which, varying but slightly in the two acts, is as follows, to wit;
“The. undivided one-half interest in and to the following described property, situated in the parish of St. Landry, state of Louisiana, formerly known as the John E. Frith estate, and described as bounded on the north by Bayou Rouge and land owned by Martin and King, on the south by lands of C. H. Frith and Isah King, east by lands of John B. Fontenot, on the west by lands formerly owned by William M. Frith, containing 1,044 acres, more or less; also another tract of land purchased by Thomas P. Frith from William M. Frith, situated in St. Landry parish, * * * described as bounded on the north by lands belonging to the heirs of Charles Clow, on the south by lands, owners unknown, east by lands of Thomas P. Frith, west by lands of Grandy Spencer, containing 123 acres, more or less — the said Thomas P. Frith does, by these presents sell the undivided one half in and to the above lands to the said S. S. Pearce.”
We take it to be admitted that the land, as thus acquired, fell into the community, then existing, between S. S. Pearce and Mary Bennett, his first wife; and, upon her death, in 1895, her undivided half interest devolved upon her seven surviving children, issue of her marriage with Pearce, one of those children being now the wife of Dr. H. Kilpatrick, and another being the defendant herein, Mrs. Claudia Pearce Owen. Thereafter S. S. Pearce married Miss Flavie M. Gaspard, to whom, in 1902, he made a dation en paiement of an undivided one-quarter interest in said tract of land, and in 1906 there was what purported to be a tax sale of the interest so conveyed to C. C. Gaspard, who in 1910 reconveyed it to Mrs. Flavie Gaspard, wife of S. S. Pearce. In the meanwhile — in August, 1904' — there was adjudicated to Dr. Kilpatrick an interest described as follows:
“780 acres of land, being three-fourths interest, bounded north, by Bayou Rouge, south by Frith, east, by Fontenot, and west, by Frith, being the property of S. S. Pearce, No. 524, regular nonresident roll, as per assessment roll f * * of the year 1903.”
*167 According to the testimony, there had been an understanding between S. S. Pearce and the children of his first wife (apart from any obligation that may otherwise have rested upon him) to the effect that he should pay the taxes on the land, and he appears to have done so up to, and inclusive of, the year 1902, hut he was unable to pay the taxes for 1903, and hence the land was sold in 1904, as stated above, and the fact that Dr. Kilpatrick had become the purchaser, we think, was known, or soon became known, to all the parties in interest, though none of them took any steps in the matter, or offered to reimburse any part of the money expended by Dr. Kilpatrick, nor have any of them since that time offered to share with him the burden of paying the taxes from year to year, which burden he has therefore borne alone. In the winter of 1910-1911 the counsel who now represents the plaintiff herein was employed by Messrs. Littell and Lawler, real estate agents in Opelousas, to examine the title to the land to which we have referred, and he made a report, pointing out certain defects. Whether his employers were acting for Dr. Kilpatrick or for the present plaintiff does not definitely appear, but we infer that they were acting for 'both parties, since it does appear that they were, about that time, negotiating with reference to the sale of the land to Eitzmaurice, the present plaintiff, and that, following his report, they called upon the counsel and employed him to take steps to clear the title, which he appears to have done, save with respect to certain matters which he hoped to remedy by means of a judgment to be obtained in a suit of this character. One of the steps taken was to obtain quitclaim deeds from all the heirs of the first Mrs. Pearce, with the exception of the defendant Mrs. Owen, between whom and Dr. Kilpatrick there appears to exist some unfriendly feeling. Those deeds are prefaced by a series of preambles, identical in language, reading in part as follows:
“Whereas, Dr. H. Kilpatrick claims to have acquired an undivided three-fourths interest in and to the hereinafter described property, by tax deed. * * * Whereas, Stephen S. Pearce acquired the whole of said property. * * * Whereas, the purchases of said Stephen S. Pearce were made under the régime of the community. * * * Whereas, the wife of Stephen S. Pearce died intestate * * * leaving as her only legal heirs [naming her seven children]. * * * Whereas, * * * Dr. Kilpatrick desires to sell his interest in said property, hut his purchaser will not accept title unless the heirs of the * * * deceased wife of Stephen S. Pearce should confirm and ratify the same. Now, therefore, in order to aid and assist the said Dr. H. Kilpatrick to convey perfect title to his interest in and to said property, appearers do hereby abandon, release and quitclaim all their rights, title and interest in and to said property, to, and in favor of the said Dr. H. Kilpatrick, his heirs and assigns, which said property is described as follows, to wit.”
(And then follow a description of the property, the notarial formula, “Done and passed,” etc., and the signatures.)
The evidence shows that the deeds thus referred to were executed in consideration of the agreement, on the part of Dr. Kilpatrick, that, after reimbursing the expense incurred by him on account of the land, and in clearing the title, the balance of the price to be received should be so divided that the parties executing the deeds should each receive a share proportioned to his, or her, interest in the property, as the heir of the first Mrs. Pearce, and Dr. Kilpatrick testifies that the same offer is open to the defendant, Mrs. Owen. The next step taken for the clearing of the title appears to have been the execution of an act of sale of the property from S. g. Pearce, Mrs. Elavie Gaspard, his wife, and Dr. Kilpatrick, to the plaintiff, coupled with a contemporaneous agreement, to effect that the act shall be inoperative unless and until the title shall have been perfected, or made acceptable, to the purchaser. In the act of sale in question, Dr. Kilpatrick, Stephen S. Pearce, Sr., and Mrs. Elavie Gaspard, his wife, appear and declare that they sell to William Eitzmaurice the entire tract of land, as original *169 ly acquired by Pearce from Frith, which said property (the act recites)—
“was acquired in part of [by] Dr. Herbert Kilpatrick at a tax sale, ® * * and in part by said Mrs. Flavie M. Gaspard, * * * by purchase from Charles C. Gaspard,” etc.
The contemporaneous agreement — reduced to writing — is to the following effect, to wit: That the vendors and vendee, having been advised that the title is “somewhat defective,” do not desire to consummate the sale until it is cleared, wherefore they agree that the vendee shall have a year within which to perfect the title, and, in the meanwhile, may record the deed; that the price ($5,225) shall be deposited in bank, and there remain in escrow until counsel, to be selected by the vendee, shall, within the year, pronounce the title good, or until the vendee shall accept it within that delay; that the vendee shall not, pending such delay, sell, mortgage, or depreciate the value of the property; that all expenses incurred by him, or by the others, in the effort to perfect the title, shall be paid by the vendors; that should it be found that the title cannot be perfected, the deed shall be canceled, and the price, deposited in escrow, withdrawn by the vendee.
The testimony received upon the trial of the case shows that the tract of land in question was regarded as a desirable one; that when it was offered for sale for taxes, in 1904 (upon the occasion when it was adjudicated to Dr. Kilpatrick), there were a number of persons present who were in the business of bidding upon and buying property so offered, but that, with respect to this particular property, no one competed with Dr. Kilpatrick. Mr. Harmonson, a real estate agent and dealer, testifies upon that subject, in part as follows:
“Q. Had you considered the [question of] ‘bidding of’ [on] the Frith plantation that was offered for sale on that day prior to the time it was offered? A. No, sin. Q. Why? [Objection and ruling. A. Because I had not figured on purchasing that tract at all, understanding that Dr. Kilpatrick wanted to buy it in for his wife, I understood; and, when the property was offered and other parties wanted to purchase and there was a kick raised about people interfering with the doctor’s purchasing -the land, to perfect the title, and some of the bidders kicked about staying off and not bidding, and I told them that I knew it was the doctor’s wife’s property, and they didn’t bid against him. Q. lie had no competition? A. No, sir. * * * Q. Can you remember the substance of a statement, or statements made by Dr. Kilpatrick at that sale, to the bystanders, or to you? A. Either Dr. Kilpatrick or Mr. Lawler made the statement that people ought not to bid on the doctor’s wife’s property, when others were ready to bid against him, and I remarked that it would not be fair to the doctor, and, as well as I remember, there was no bid against him. * * * Q. Did you understand that Dr. Kilpatrick, from his statement, was purchasing the property for himself at that tax sale, and for his own account, as a matter of speculation? A. I took it that the doctor was purchasing the property for his wife and other heirs.”
Mr. Lawler testified in part as follows, and it was admitted that Mr. Littell would have given similar testimony, to wit:
“Q. Xou don’t remember the statement made by Dr. Kilpatrick as to his purpose in acquiring this property at tax sale, and why he didn’t have opposition? A. I don’t remember particularly about it, but I don’t suppose our firm would have bid against him, as he was interested in it. * * * Q. Why didn’t you or your firm bid on the property? A. As I stated before, Mr. Littell at that time attended to that part of the business, and, as a rule, did the bidding, and unless it was from our knowledge that Kilpatrick or family was interested is the only reason I could give.”
Dr. Kilpatrick in his testimony seems to convey the idea that, in buying the property, he acted in the belief that he had the same right to do so that a third person would have had, and that the title vested in him. 1-Ie says that as to the interest of his wife she thereby, as his partner in community, acquired an undivided one-half of three-fourths, whereas, as the heir of her mother, her interest was only one-seventh of one-half and, as to the other heirs (in effect), that, whilst he was under no obligation to them, he gave the assurance, in negotiating for the quitclaim deeds, that he was going to give them just *171 what was coming to them, after paying the expenses and getting this title.
He was asked, among others, the following question, and gave the answer as appears below:
“Q. Didn’t you believe that they [other bidders at the tax sale] kept off of you, on that occasion and did not bid against you on account of the fact that the general belief prevailed that you were purchasing [the] property for account of the heirs? A. They knew I was interested in it, and didn’t butt in; I did not ask them not to do it; I didn’t talk it over with any of them.”
The grounds of defense which Mrs. Owen sets up to this suit are substantially:
(1) That Dr. Kilpatrick bought the property, at the tax sale, as the agent of his wife and her coheirs, and so stated at the.time.
(2) That he has treated the tax title as of no effect, in accepting the quitclaim deeds from the heirs and in agreeing to pay them their respective proportions of the price to be obtained for the property.
(3) That plaintiff, Fitzmaurice, is not an innocent third person, but was informed before his alleged purchase, of the true situation, and hence entered into the agreement that the price should be held in escrow, and that the sale should not be consummated until the title shall have been perfected.
Opinion;
It must be borne well in mind that this is not a petitory action, in which the 'plaintiff asks the court to vindicate and sustain the title which, in his petition, he alleges that he acquired from Dr. Kilpatrick, Stephen S. Pearce, and Mrs. Flavie Gaspard Pearce, but that it is merely a suit to confirm the tax title acquired by Dr. Kilpatrick, and which is said to constitute a link in the chain leading to the title so acquired by plaintiff.
The allegations of the petition read, in part, as follows:
“That said tax deeds to said property, made and executed to petitioner’s authors as aforesaid, have been recorded for more than three years ■ * * * and that the tax titles evidenced by said deeds have therefore been quieted by the prescription of three years, established by article 233 of the Constitution of this state, adopted in the year 1898. That petitioner, by virtue of his acquisition of said property, by mesne or direct conveyances, from said tax purchasers, is now the sole and only owner of said property, and desires to have his title thereto confirmed and quieted in accordance with the provisions of said article of the Constitution of this state and of Act No. 101 of the Acts of the General Assembly of this state, approved July 12, 1898.”
The prayer is:
“That after due proceedings had, there be judgment in his [petitioner’s] favor and against the said [naming the parties cited] confirming and quieting petitioner’s title to the herein-above described property, and recognizing petitioner as the sole and only owner thereof.”
[1] The only provision upon the subject of the confirmation of titles, contained in article 233 of the Constitution, reads:
“The manner of notice [of tax sales] and form of proceeding to quiet tax titles shall be provided by law.”-
And Act No. 101 of 1898, by its title and text, relates exclusively to tax titles, and does not purport to provide a form of proceeding for the quieting of titles of any other description; and we take it that the scope and purpose of such an action is to have it determined, not whether by reason of estoppels or 'other matters applicable to titles in general a conventional or other form of title, acquired directly or through conveyance from a tax purchaser, shall be confirmed, but whether under the law, constitutional and statutory specially relating thereto, a tax title shall be confirmed. The question, therefore, whether the conventional title, alleged to have been acquired by the plaintiff herein from the holder of the tax title, would be protected, as in ordinary cases, by reason of the fact (if it were a fact) that plaintiff acquired it upon the faith of the public records, could not properly be. brought into this case; for such title is not a tax title, and in so far *173 as it includes a tax title (save that its defects may be cured by prescription or ratification), cannot be differentiated for the purposes of a suit brought under article 233 of the Constitution and Act No. 101 of 1898, from the tax title so included.
Any other interpretation of the law would lead to the conclusion that a person claiming or holding real estate, under a title tracing back, however remotely, to a tax title, could bring an action, under the law thus referred to, for the confirmation, not only of the tax title, but of all the links in the chain, from the tax title down to that immediately under which the claimant acquired.
[2] Apart, however, from the considerations thus stated, the plaintiff before the court has never acquired a title to the property here in question from the tax purchaser. He has merely entered into a tentative contract whereby, being informed as to the relations subsisting between the tax purchaser and other persons having or claiming interests in the property, and of the circumstances under which his vendor purchased at the tax sale, he has consented to appear as the vendee of the tax purchaser in order to litigate, in that capacity, questions which would otherwise be litigated between such interested persons and the tax purchaser himself. It is true that plaintiff alleges that, “by act under private signature, * * * he purchased from Dr. Herbert Kilpatrick, Mrs. Flavie M. Gaspard, wife of Stephen S. Pearce, Sr., and her said husband,” the property in controversy, but in the course of the trial it was developed that the “act under private signature,” thus sued on, did not contain the real contract into which the parties had entered, and that there was another instrument which, when produced, was found to contain the following preamble, explanatory of its purpose, to wit:
“Whereas, the said parties, both vendors and vendee, have been advised that the title to said property is somewhat defective, and it is their desire not to consummate said sale until the title to said property had been cleared.”
[3] And then follows the agreement that the vendee shall have a year within which to clear the title, but that the vendors shall pay the expenses incurred in that behalf, and further as has already been stated. Plaintiff is not therefore before the court, either as an innocent purchaser, buying real estate upon the faith of the public records, or as a purchaser who has bought with full knowledge of unrecorded defects in the title, and insists upon his right to the protection of the law against such defects. His contract is one having a suspensive condition, and it is left entirely to him to determine whether the condition shall be fulfilled or not. If he does not choose to perfect the title within the delay specified, he is subjected to no penalty, and the price, deposited in escrow, and presumably bearing interest, is returned to him; any expenses that may have been incurred being borne by the other parties. Not being -the owner of the property, and in the light of the whole contract not being entitled to appear in that rSle, it may very well be doubted whether he has any standing to prosecute this suit; but, conceding, arguendo, that he has, his position is no better than would be that of the adjudicatee at the tax sale, whose battle he has undertaken to fight, and in whose shoes he has voluntarily placed himself. The question, then, is, What would be the right of Dr. Kilpatrick; as between him and the defendant and sole appellant, Mrs. Owen? For it is to be remembered that, in so far as the judgment appealed from affects the one-fourth interest in the property that was owned by S. S. Pearce, the one-fourth that was owned by the present Mrs. Pearce, and the six-sevenths of the remaining half that was owned by the other six heirs of the'first Mrs. Pearce, there is no one before this court making any contest. *175 We are not prepared to say that the mere fact that Dr. Kilpatrick (having himself no interest in the property at the time of the tax sale) was the brother-in-law of Mrs. Owen, who was a co-owner with his wife, would have precluded him from acquiring the interest of Mrs. Owen, although we are of opinion that he could not, and did not, acquire the interest of his wife, who, on the other hand, as his partner in community, became co-owner with him of any interest that he did acquire; but, in view of the undisputed fact that, to the knowledge and with the acquiescence of Dr. Kilpatrick, though not, perhaps, at his request, all competition was voluntarily stifled, in order that he might bid in the property at his own price, with the understanding that he was acting for and on behalf of his wife and the other heirs, and, so far as they were concerned, was merely paying -the taxes, with no intention' of divesting their interests in the property, but rather to protect them, and of his apparent acquiescence in that view, in his recent dealings with those heirs, we are of opinion that Mrs. Owen would be entitled to an action to enforce that understanding, and that what she is entitled to assert in an action brought by her, she is entitled to set up by way of defense to an action brought against her. We, therefore, and for the reasons stated, conclude that the interest of Mrs. Owen in the land in question must be considered to have been acquired by Dr. Kilpatrick, at the tax sale, for her benefit, and that it has so been held since that time, from which, it follows that, as to her, the prescription of three years has no application, and that she is entitled to be recognized as still the owner of that interest, and put in possession upon reimbursing the money expended by Dr. Kilpatrick on account of it. We are further of opinion that, as to said interest, the deed from Dr. Kilpatrick and others to the plaintiff herein is of no effect, and should be canceled and erased from the records.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed in so far as it affects the interest of Mrs. Claudia Pearce, wife of Charles W. Owen in the land which is the subject of this litigation. It is further decreed that said Mrs. Owen be recognized as the owner of an undivided one-seventh of one-half or one-fourteenth of the whole, of said land, and put in possession thereof, upon her reimbursing Dr. Herbert Kilpatrick her proportion of the money expended by him in bidding in said property at tax sale, in paying taxes upon it, and otherwise upon account of said property, as he may show, the money so to be reimbursed to bear legal interest from the dates at which it was paid out. It is further decreed that, as to said interest of Mrs. Owen, the demand of the plaintiff be rejected, and this suit dismissed at his cost. It is further decreed that, as to said interest, the instrument under private signature, of date April 15, 1911, recorded upon the same day, in Book No. 4, page 626, of the Conveyance Records of the parish of St. Landry, purporting to be a sale of the land in dispute by Dr. Herbert Kilpatrick, Stephen S. Pearce, and Mrs. Plavie M. Gaspard, wife of the last named, be decreed void and of no effect, and that the inscription thereof in said conveyance records be canceled. It is further decreed that plaintiff pay all costs herein expended or incurred by or on behalf of said defendant, Mrs. Claudia Pearce, wife of Charles W. Owen.